UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
2023 JAN 23 PM 12: 19

UNITED STATES
Lovie Dean Grant,
Plaintiff,

V.

Joyce Fultz,
J.Phillip Jones,
J.Phillip Jones Law Firm,
Stewart Title Company,
Defendant(s)

)
)
) Case No.
)
) Judge
) Magistrate Judge
)
)
)
)
)
)

**03-23 0063**

---

# PETITION DECLARATORY JUDGMENT

---

Plaintiff Lovie Dean Grant petitions this court for a Rule 57 Declaratory Judgment action to terminate the controversy giving rise to these proceedings. The plaintiffs petition, no matter if deemed inartfully pled, must be held to a less stringent standard then formal pleadings drafted by bar admitted attorneys and can only be dismissed for failure to state a claim, if it appears to be on the doubt that the plaintiff can not provide any facts to her claim that would entitle her to relief. The plaintiffs factual allegations have to be accepted as the truth and any reasonable inferences that may be drawn there from. The plaintiff's petition must not be read too narrowly, but must instead be read liberally so that any inferences can be drawn there from. Directv, Inc. V. Treesh, 487 F.3d684, 689 (6th Cir. 20006); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002).

## PLAINTIFF(S)

1. United States, Department of Defence who address is at 950 Pennsylvania Avenue NW, Washington, DC 20530-0001

2. Lovie Dean Grant is a consumer and her homestead is at 2494 Saundersville Ferry Road, Mount Juliet Tennessee.

## DEFENDANT(S)

3. Joyce Fultz, Legal Assistant at J.Phillip Jones Law Firm, her principal place of business is at 1800 Hayes Street Nashville, TN 37203.

4. J. Phillip Jones, Lawyer at J. Phillip Jones Law Firm, his principle place of business is at 1800 Hayes Street Nashville, TN 37203.

5. J. Phillip Jones Law Firm, Debt Collector, and its principal office is at 1800 Hayes Street Nashville, TN 37203.

6. Stewart Title Company, Trustee listed on Deed of Trust, who's place of business is 13026 Lebanon Road Ste 100, Mt. Juliet, TN 37122.

## JURISDICTION AND VENUE

7. Subject Matter Jurisdiction. This Court has Subject Matter jurisdiction to hear any violations of the constitutional law. The fifth and the fourth Amendments are in question giving this court the subject matter jurisdiction.

8. Personal Jurisdiction. This Court has Personal jurisdiction pursuant to 28 U.S. 1332(a), where Plaintiff has domicile in Tennessee, all transactions have been done in Tennessee, The collateral is in Tennessee, and the defendants are mostly Officials of the State of Tennessee.

9. Venue Jurisdiction: Venue is appropriate in this court pursuant to 28 U.S. 1391(b) because Three of the parties reside in this judicial district and the alleged action occurred within this district.

10. The Clearfield Doctrine States "when private commercial paper is used by a corporate government, then the government loses its sovereignty status and becomes no different than a mere private corporation."

## PLAINTIFF MAKES FOLLOWING CLAIM

The defendants have come together in a conspiracy to violate Constitutional Law and the plaintiffs Civil Rights. The defendant has injured the plaintiffs reputation and continues to cause her and her family emotional duress. The defendant(s) continues to try Extort from the plaintiff under the treat of seizing her home. The defendant(s) continue to send people by her private residence to stalk and harass her. The defendant(s) have violated the plaintiffs 4th Amendment Rights ``The *right of the people to be secure in their persons, **houses**, papers, and effects, against **unreasonable searches and seizures**, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized;*"and his 5th Amendment Rights *"nor be deprived of life, liberty, or property, **without due process of law**; nor shall private property be taken for public use, without just compensation."* The defendant(s) started a wrongful, unconstitutional nonjudicial foreclosure without legal standing in law.

## FACTUAL ALLEGATIONS

Colten Mortgage and Scott Fornelius, Defendant(s), provided the plaintiff with an "application" for a consumer purchase money mortgage loan for herself. *"Application means an oral or written request for a covered loan that is made in accordance with procedures used by a financial institution for the type of credit requested."* 12 CFR 1003.2. After the plaintiff was approved for a consumer purchase money loan the creditor was provided a "finance charge" and the "cash advance" was given to Colten Mortgage as the authorized person. *"Purchase money loan. A cash advance which is received by a consumer in return for a "Finance Charge""* 16 CFR 433.1. The defendant(s) then provided the plaintiff with a "Promissory Note," a "Deed of Trust", and a "Warranty Deed" on or around January 31, 2020. None of these documents mention anything about this being a consumer credit transaction or the "finance charge."

FHA demands that a borrower lives in the home as a personal property making this a consumer credit transaction.

The instruments lack certain disclosures required by Federal Statute to be given to a consumer.

- The plaintiff was never given the "Disclosure" required by 12 CFR 1016 Privacy Of Consumer Financial information;
- The plaintiff was never given the "Disclosure" required in 12 CFR 1026 Truth in Lending about the consumers rights to Rescind;
- The plaintiff was not given the disclosure required by 16 CFR Part 433;
- The plaintiff was never given the "Disclosure" required in 15 USC 1635.

In connection with the "Disclosure" required in 16 CFR 433 the Federal Trade Commission had this to say, *"In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, in the course of financing a* **consumer** *purchase of goods or services, to employ procedures which may make the consumer's duty to pay independent of the seller's duty to fulfill his obligations." "The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be."* Any consumer contract used in "Commerce" must contain this disclosure or it is an "unfair and deceptive practice." The plaintiff signed these documents with **NO knowledge** of these mistakes in the document.

The plaintiff Signed the "Promissory Note," the "Deed of Trust," and gave it to the defendant(s) creating a trust according to TCA 35-15-401. *"(1) The transfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death; (2) The declaration by the owner of property that the owner holds identifiable property as trustee." "Except as required by a statute other than this chapter, a trust need not be evidenced by a trust instrument, but the creation of an oral trust and its terms may be established only by clear and convincing evidence."* TCA

35-15-407. Which creates a "Fiduciary Duty" on the behalf of the defendant(s) to do what is best for the beneficiary/grantor. *"In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person."* UCC 3-307(2). It's not in the best interest of the Trust to provide "unfair and Deceptive" documents in order to form an illegal contract. *"A trust is void to the extent its creation was induced by fraud, duress, or undue influence."* TCA 35-15-406.

The plaintiff received a "letter of default" from Joyce Fultz and J. Phillip Jones Law Firm, defendant(s), stating that they had been assigned to collect a debt and that she had 30 days to dispute the debt or it will be presumed valid in accordance with the FDCPA. The plaintiff sent the defendant(s) a letter, certified mail, asking for a validation of debt according to the FDCPA. The defendant(s) responded by letter and stated that she did not have the documents requested and that "You had to get them myself." The defendant(s) enacted an unlawful nonjudicial foreclosure without proving that they have legal standing to do so. The foreclosuring party did not have "legal authority to execute the power of sale clause" in the 'Deed of Trust," and therefore the "Notice of Default and Election to Sell' civil document has a "Fatal Defect" which robbed the legal system of Jurisdiction and the Non-Judicial foreclosure must be vacated. **The Attorney Did Not Have Legal Authority To Execute The Power of Sell Clause**. The legal Trustee is the only person who can sign to execute the power of sale clause in the "Deed of Trust." In this case there is no legal trustee because the promissory note and deed of trust were never placed into the trust, because it was bundled and sold during the securitization process. The "Deed of Trust" for loan #200104282, states on the first page "The Trustee is "Stewart Title Company" and the beneficiary is "MERS." The notice of default and election to sale, will show at the bottom of the page the "Power of Sale Clause" was executed by Joyce Fultz, an agent for the Law Firm of J Phillip Jones. The attorney

signed as the "Trustee," and no attorney can appear in court without the physical human being he represents. *"Agents can not testify for principals."*

## PLAINTIFF ASK FOR THE FOLLOWING JUDGMENTS

1. A Declaratory Judgment ruling if the defendant(s) had legal standing to enact a nonjudicial foreclosure.
2. A Declaratory Judgment ruling on if the defendant(s) activity is unfair and deceptive for not having the consumer disclosures.
3. A Declaratory Judgment ruling on if the defendant(s) violated the plaintiffs rights to due process of law.
4. A Declaratory Judgement ruling if the Defendant(s) violated the FDCPA.

## PRAY FOR RELIEF

1. An Order to stop any and all foreclosure actions.
2. Mandate the State to return the plaintiff's Deed and Title clear of any and all encumbers.
3. 5 million dollars in monetary damages

RESPECTFULLY

*Lovie Dean Grant*

Lovie Dean Grant

*Exhibit A*
*Unsigned copy of*
*Promissory Note*

LOAN #: 200104282
MIN: 1014082-0000004581-5

## NOTE

FHA Case No.
483-6327807-703-203B

January 31, 2020
[Date]

GREENWOOD VILLAGE,
[City]

Colorado
[State]

2494 Saundersville Ferry Rd, Mount Juliet, TN 37122
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $274,828.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Colten Mortgage, a Limited Liability Corporation.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on March 1, 2020. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on February 1, 2050, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 6021 S. Syracuse Way, Suite 104
Greenwood Village, CO 80111

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,272.78.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.

Page 1 of 3

Initials: _____

FHA3200NOT  0216
FHA3200NOT (CLS)
01/31/2020 02:10 PM PST

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LOVIE D GRANT

Lender: Colten Mortgage
NMLS ID: 1628879
Loan Originator: Renee Stuart
NMLS ID: 1696844

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                    Page 2 of 3

Initials: _____
FHA3200NOT   0216
FHA3200NOT (CLS)
01/31/2020 02:10 PM PST



PAY TO THE ORDER OF:
WITHOUT RECOURSE
Colten Mortgage, a Limited Liability Corporation


BY: _____


· TITLE: _____


[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)                                                        Initials: _____
Ellie Mae, Inc.                                    Page 3 of 3              FHA3200NOT   0216
                                                                           FHA3200NOT (CLS)
                                                                    01/31/2020 02:10 PM PST

When recorded, return to:
Colten Mortgage
Attn: Closing Department
6021 S. Syracuse Way, Suite 104
Greenwood Village, CO 80111
303-835-9928

This instrument was prepared by:
Katherine Harris
Colten Mortgage, LLC
6021 S Syracuse Way, Suite 104
Greenwood Village, CO 80111
720-216-2056

LOAN #: 200104282

———————————————— [Space Above This Line For Recording Data] ————————————————

## DEED OF TRUST

| FHA Case No. |
| --- |
| 483-6327807-703-203B |

MIN: 1014082-0000004581-5
MERS PHONE #: 1-888-679-6377

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
(A) **"Security Instrument"** means this document, which is dated **January 31, 2020,** together with all Riders to this document.
(B) **"Borrower"** is **LOVIE D GRANT, SINGLE WOMAN.**

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **Colten Mortgage.**

Lender is **a Limited Liability Corporation,** organized and existing under the laws of **Colorado.**
Lender's address is **6021 S. Syracuse Way, Suite 104, Greenwood Village, CO 80111.**

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                       Page 1 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

(D) "Trustee" is **Stewart Title Company Tennessee,**

a resident of **Mount Juliet, TN.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **January 31, 2020.** The Note states that Borrower owes Lender **TWO HUNDRED SEVENTY FOUR THOUSAND EIGHT HUNDRED TWENTY NINE AND NO/100**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S. **$274,829.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **February 1, 2050.** The maximum principal indebtedness for Tennessee recording tax purposes is **$274,829.00.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Planned Unit Development Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.             Page 2 of 11

Initials: _____
TNEFHA15DE 1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

Case 3:23-cv-00063    Document 1    Filed 01/23/23    Page 11 of 38 PageID #: 11

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Wilson**
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 02-17-452-017-026**

<u>Derivation Clause</u>
The instrument constituting the source of the Borrower's interest in the foregoing described property was a                                        recorded [at Book                          Page                          ]
[under Instrument No.                          ] in the Register's Office of
                                        County, Tennessee.

which currently has the address of    **2494 Saundersville Ferry Rd, Mount Juliet,**
                                                                                        [Street] [City]
Tennessee  **37122**                          ("Property Address"):
            [Zip Code]

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                        Page 3 of 11                                        Initials: _____
                                                                                                    TNEFHA15DE  1116
                                                                                                    TNEDEED (CLS)
                                                                                                    01/31/2020 02:10 PM PST

may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                      Page 4 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 5 of 11

Initials: _____
TNEFHA15DE    1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 6 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

Case 3:23-cv-00063    Document 1    Filed 01/23/23    Page 15 of 38 PageID #: 15

not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                          Page 7 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 8 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                 Page 9 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

Case 3:23-cv-00063   Document 1   Filed 01/23   Page 18 of 38 PageID #: 18

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 14. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 24, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**27. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                        Page 10 of 11

Initials: _____
TNEFHA15DE   1116
TNEDEED (CLS)
01/31/2020 02:10 PM PST

Colten Mortgage

# SETTLEMENT CERTIFICATION

**Property Address:**
**2494 Saundersville Ferry Rd**
**Mount Juliet, TN 37122**

**NOTICE TO ALL PARTIES:** If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

### CERTIFICATION OF BUYER IN AN FHA-INSURED LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash downpayment. I certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

_____    1/30/20
LOVIE D GRANT                                       DATE

Publication March 2015
Ellie Mae, Inc.

Page 1 of 2

GFHASCRT 0915
GFHASCRT (CLS)
01/30/2020 02:10 PM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**IN WITNESS WHEREOF, Borrower has executed this Security Instrument.**

Witnesses:

_____

_____

_____    1/30/20~~20~~ (Seal)
LOVIE D GRANT                                                              DATE

State of TENNESSEE                          )
County of: WILSON                           )

On this 31st day of January 2020 before me personally appeared LOVIE D GRANT, to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires: 2.17.21

_____
Notary Public

Lender: Colten Mortgage
NMLS ID: 1628879
Loan Originator: Renee Stuart
NMLS ID: 1696844

TENNESSEE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 11 of 11                    Initials: _____
                                                                                  TNEFHA15DE   1116
                                                                                  TNEDEED (CLS)
                                                                                  01/31/2020 02:10 PM PST

THDA LOAN NO.:

## Tennessee Housing Development Agency (THDA)
## Rider

THIS THDA RIDER (the "Rider") is made this 31st day of January, 2020, and is incorporated into and shall be deemed to amend and supplement the Deed of Trust or Security Instrument (the "Deed of Trust") of the same date given by the undersigned ("Borrower") to secure Borrower's note dated January 31, 2020, in the original principal amount of 274,829.00 (the "Note") payable to Colten Mortgage, LLC ("Lender") and to encumber the property described in the Deed of Trust located at 2494 Saundersville Ferry Rd, Mount Juliet, TN 37122 (the "Property").

Borrower and Lender acknowledge that the Tennessee Housing Development Agency ("THDA") is providing the funds for the loan evidenced by the Note and Deed of Trust (the "Loan") or will consider purchasing the Loan upon submission of proper documentation by Lender. Borrower and Lender further acknowledge that the funds used by THDA to make or purchase the Loan result from the issuance of tax-exempt bonds by THDA and that THDA will rely on this Rider to assure compliance with the relevant provisions of the Internal Revenue Code in effect on the date of issuance of the bonds, the Internal Revenue Code of 1986, as amended and all regulations promulgated by the Internal Revenue Service regarding tax-exempt bonds (collectively, the "Code") and THDA program requirements. Therefore, in addition to the covenants and agreements made in the Deed of Trust, Borrower and Lender further covenant and agree to amend and modify the Deed of Trust as set forth in this Rider.

THDA, Lender, or such of its successors or assigns as may be charged with responsibility for assuring compliance by Borrower with the provisions of this Rider, may accelerate and require immediate payment in full of all sums evidenced by the Note or secured by this Deed of Trust upon the occurrence of any or all of the following events:

1. All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

a. Who cannot reasonably be expected to occupy the Property as their principal residence within a reasonable time after the sale or transfer, as provided in Sections 143(c) and 143(i)(2) of the Code; or

b. Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, as provided in Sections 143(d) and 143(i)(2) of the Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1)); or

c. For a purchase price higher than the existing applicable THDA approved acquisition cost limit for the county in which the Property is located, which acquisition cost limit shall be determined by THDA based on Section 143(e) of the Code and regulations promulgated in connection therewith.

d. Who has family income higher than the existing applicable THDA approved income limit based on household size for the county in which the Property is located, which income limit shall be determined by THDA based on Section 143(f) of the Code and regulations promulgated in connection therewith.

2. Borrower fails to continuously occupy the Property described in the Deed of Trust as Borrower's principal residence or uses the Property in a trade or business without the prior written consent of THDA.

3. Borrower omits or misrepresents a fact in Borrower's application for the Loan that is material to the requirements of Section 143 of the Code or THDA program requirements.

Any failure to exercise the right of acceleration upon the occurrence of any of the events specified above shall not be a waiver of any subsequent exercise of this right by THDA.

IN WITNESS WHEREOF, by signing below, Borrower accepts and agrees to the terms and provisions of this Rider as an amendment or addition to the Deed of Trust.

BORROWER                           BORROWER

Exhibit C

# Jackie Murphy
## Wilson County Register of Deeds
P.O. Box 280 (37088-0280)
228 East Main Street, Room 108
Lebanon, Tennessee 37087

STATE OF TENNESSEE
COUNTY OF WILSON

CERTIFICATION # 00034323

I, Jackie Murphy, Register of Deeds, hereby certify this is a true and perfect copy of Instrument Number, 22034909, Book Number, 2228, page(s), 266, recorded in this office as a MISCELLANEOUS from GRANT LOVIE DEAN to .

Witness the Official Signature and Seal this 28th day of December 2022.

Jackie Murphy, Register

*Leanne Attwood*

Deputy Register

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE AND OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFER AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: 100751941.

## THIS INSTRUMENT WAS PREPARED BY

Lovie Dean Grant

2494 Saundersville Ferry Drive Mount Juliet, Tennessee

# ACKNOWLEDGEMENT OF SPECIAL WARRANTY DEED

| ADDRESS OF OWNER AS FOLLOW(S) | MAP PARCEL NUMBERS |
|---|---|
| Lovie Dean Grant | 029k-A-002.00 |
| 2492 Saundersville Ferry Road | |
| Mount Juliet, Tn 37122 | |

I/we **Cheryl S Richardson and Winfred E Richardson, a married couple**, hereinafter called GRANTOR(S), has/have hereinafter called the GRANTEE(S), has/have bargained and sold, and by these presents do transfer and convey unto **Lovie Dean Grant, a single woman,** hereinafter called GRANTEE(S), his/her/their affigns, a certain tract or parcel of land in Wilson County, State of Tennessee

Land in the First Civil District of Wilson County, Tennessee, Being Lot No. 121 on the Plan of Crosswinds Subdivision as of record in Plat Book 2, Page 104, Register's Office of Wilson County Tennessee.
Said Lot No. 121 fronts 90 feet on the Easterly side of Saundersville Ferry Road and runs back 192.00 feet on the Northerly line and 319.5 feet on the Southerly line to a line in the rear which measures 74 feet thereon.

Being the same property conveyed to Willard A. Duke and wife Cheryl S. Duke by Warranty Deed from Newcastle Builders Inc. dated 03/14/1979 and recorded in Deed Book 353, Page 308 in the Register's Office for Wilson County, Tennessee. Being the same property conveye to Cheryl (Sutherland) Duke by Final Decree of Divorce entered by Judge Robert P. Hamilton on 07/10/1991 and filed of record in Deed Book 426, Page 75 in the Register's Office for Wilson County, Tennessee. Being the same preporty conveyed to Cheryl S. Richardson and Winfred E. Richardson, married by Warranty Deed from Cheryl S. Duke (Aka Sutherland), dated 04/24/2003 and recorded on 05/02/2003, of record in Book 976, Page 263, Register's Office for Wilson County, Tennessee. SEE Exbhibit A + Exbhibit B

I, Lovie Dean Grant, the living breathing souls created in the image of God the most High, with indefeasible title to our land and lawful owners of the landed estate known as LOVIE DEAN GRANT, and it's real property and interest, under the seal Lovie Dean Grant is recorded as the

Book 1938 Page 344

grantee on the Special Warranty Deed for the real estate described on the attached certified copy of said deed.

It is my freewill act and deed, to execute this acknowledgement of our acceptance of the Special Warranty Deed and lawful ownership of the property under the terms of the deed. We ask that the record on file in the office of register of deeds be updated to show our acceptance of the deed, as lawful owner of the real estate described therein with all rights reserved.

All of our other real property and interest attached to this real estate is to be immediately returned to us.

Done under our hand and seal or our freewill act and deed.

_Lovie Dean Grant_
Lovie Dean Grant
December 28, 2022

Wilson County )

)SS

State of Tennessee )

On this 28 day of December, before me personally appeared Lovie Dean Sims, to me known to be the living breathing person who executed the Foregoing instrument And acknowledged that Lovie Dean Grant executed the same as her free act and deed.

Grant CLG 12/28/22

_Sydney Cope_
Notary Public Signature

4-26-2026
My Commission Expires

Seal:



BK/PG: 2228/266-271
**22034909**

| 6 PGS:AL-MISCELLANEOUS | |
|---|---|
| LEANNE BATCH: 532234 | |
| 12/28/2022 - 01:33 PM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 30.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 32.00 |

STATE OF TENNESSEE, WILSON COUNTY
**JACKIE MURPHY**
REGISTER OF DEEDS

Book 1938 Page 344

Exbhibit A

**Jackie Murphy**
**Wilson County Register of Deeds**
P.O. Box 280 (37088-0280)
228 East Main Street, Room 108
Lebanon, Tennessee 37087

STATE OF TENNESSEE         CERTIFICATION # 00034322
COUNTY OF WILSON

I, Jackie Murphy, Register of Deeds, hereby certify this is a true and perfect copy of

Instrument Number, 20696786, Book Number, 1938, page(s), 344, recorded in this office as a

DEED from RICHARDSON CHERYL S, RICHARDSON WINFRED E to GRANT LOVIE D.

Witness the Official Signature and Seal this 27th day of December 2022.

Jackie Murphy, Register

*Jeanne Atwood*

Deputy Register



Phone: 615-443-2611     www.wilsondeeds.com     Fax: 615-443-3288

Exbhit B

<table>
<tr><td colspan="2">**WARRANTY DEED**<br><br>(Notary Seal: TRACEY TRUMPHOUR, STATE OF TENNESSEE NOTARY PUBLIC, WILSON COUNTY)</td><td colspan="2">STATE OF TENNESSEE<br>COUNTY OF <u>WILSON</u><br>THE ACTUAL CONSIDERATION OR VALUE, WHICHEVER IS GREATER, FOR THIS TRANSFER IS $279,900.00<br><br>_____<br>Affiant<br>SUBSCRIBED AND SWORN TO BEFORE ME, THIS THE 31ST DAY OF JANUARY, 2020<br><br>_____<br>Notary Public<br>MY COMMISSION EXPIRES: _____ 3.17.21<br>(AFFIX SEAL)</td></tr>
<tr><td colspan="4">**THIS INSTRUMENT WAS PREPARED BY**<br>Sidwell & Barrett, PC<br>Stewart Title Company Tennessee Division, 121 1st Ave S, Ste 200, Franklin, TN 37064-6300</td></tr>
<tr><td>ADDRESS NEW OWNER(S) AS FOLLOWS:<br><br>Lovie D. Grant</td><td>SEND TAX BILLS TO:<br><br>Lovie D. Grant</td><td colspan="2">MAP PARCEL NUMBERS<br><br>029K-A-002.00</td></tr>
<tr><td>(NAME)<br>2494 Saundersville Ferry Road</td><td>(NAME)<br>2494 Saundersville Ferry Road</td><td colspan="2"></td></tr>
<tr><td>(ADDRESS)<br>Mount Juliet, TN 37122</td><td>(ADDRESS)<br>Mount Juliet, TN 37122</td><td colspan="2"></td></tr>
<tr><td>(CITY)    (STATE)    (ZIP)</td><td>(CITY)    (STATE)    (ZIP)</td><td colspan="2"></td></tr>
</table>

For and in consideration of the sum of ten dollars, cash in hand paid by the hereinafter named GRANTEE(S), and other good and valuable considerations, the receipt of which is hereby acknowledged, I/we **Cheryl S. Richardson and Winfred E. Richardson, a married couple**, hereinafter called the GRANTOR(S), has/have bargained and sold, and by these presents do transfer and convey unto **Lovie D. Grant, a single woman**, hereinafter called the GRANTEE(S), his/her/their assigns, a certain tract or parcel of land in Wilson County, State of Tennessee, described as follows, to-wit:

Land in the First Civil District of Wilson County, Tennessee, Being Lot No. 121 on the Plan of Crosswinds Subdivision as of record in Plat Book 2, Page 104, Register's Office of Wilson County, Tennessee

Said Lot No. 121 fronts 90 feet on the Easterly side of Soundersville Ferry road and runs back 192.00 feet on the Northerly line and 319.5 feet on the Southerly line to a line in the rear which measures 74 feet thereon.

Being the same property conveyed to Willard A. Duke and wife Cheryl S. Duke by Warranty Deed from Newcastle Builders Inc. dated 03/14/1979 and recorded in Deed Book 353, Page 308 in the Register's Office for Wilson County, Tennessee. Being the same property conveyed to Cheryl (Sutherland) Duke by Final Decree of Divorce entered by Judge Robert P. Hamilton on 07/10/1991 and filed of record in Deed Book 426, Page 75 in the Register's Office for Wilson County, Tennessee. Being the same property conveyed to Cheryl S. Richardson and Winfred E. Richardson, married by Warranty Deed from Cheryl S. Duke (Aka Sutherland), dated 04/24/2003 and recorded on 05/02/2003, of record in Book 976, Page 263, Register's Office for Wilson County, Tennessee.

This conveyance is subject to the following: Taxes for the year 2020 and subsequent years, a lien not yet due and payable, which have been prorated as of the date of closing and assumed by the Grantee herein; All matters shown on the plat of record in Plat Book 2, Page 104, in the Register's Office for Wilson County, Tennessee; EASEMENT including terms and conditions thereof as recorded in Book 411, Page 963 in the Register's Office for Wilson County, Tennessee.

This conveyance is further subject to (1) all applicable zoning ordinances (2) utility, sewer, drainage and other easements of record, (3) all subdivision/condominium assessments, covenants, bylaws, restrictions, declarations and easements of record, (4) building restrictions, and (5) other matters of public record.

File No.: 626269
Warranty Deed TN

Page 1 of 2

Book 1938 Page 344

unimproved ☐

This is improved ☒        2494 Saundersville Ferry Road, Mount Juliet, TN 37122

     (House Number)     (Street)     (P.O. Address)     (City or Town)     (Postal Zip)

TO HAVE AND TO HOLD the said tract or parcel of land, with the appurtenances, estate, title and interest thereto belonging to the said GRANTEE(S), his/her/their assigns forever; and we do covenant with the said GRANTEE(S) that we are lawfully seized and possessed of said land in fee simple, have a good right to convey it and the same is unencumbered, unless otherwise herein set out; and we do further covenant and bind ourselves, our heirs and representatives, to warrant and forever defend the title to the said land to the said GRANTEE(S), his/her/their assigns, against the lawful claims of all persons whomsoever. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

Effective the 31st day of January, 2020.

_Cheryl S. Richardson_
Cheryl S. Richardson

_Winfred E. Richardson_
Winfred E. Richardson

State of Tennessee
County of Wilson

BK/PG:1938/344-346
20696786

3 PGS : DEED
HISTY THOMAS 441905 - 20696786
02/04/2020 - 02:00 PM
VALUE                   279900.00
MORTGAGE TAX                 0.00
TRANSFER TAX              1035.63
RECORDING FEE              15.00
DP FEE                      2.00
REGISTER'S FEE              1.00
TOTAL AMOUNT             1053.63
STATE of TENNESSEE, WILSON COUNTY
JACKIE MURPHY

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the within named Cheryl S. Richardson and Winfred E. Richardson, the bargainor(s), with whom I am personally acquainted or proved to me on the basis of satisfactory evidence to be the person(s) described herein, and who acknowledge that he/she/they executed the within instrument for the purposes therein contained.

Witness my hand and Official seal this 31st day of January, 2020.

Notary Public:
My Commission Expires:    5.17.21

RETURN TO:
**Stewart Title Company Tennessee Division**
**13026 Lebanon Road, Ste 100**
**Mount Juliet, TN 37122**

State of Tennessee Notary Public — Tracey Trumphour — Wilson County

File No.: 626269
Warranty Deed TN

Page 2 of 2

Book 1938 Page 345

TRUE COPY CERTIFICATION

I, Kimie Perry, do hereby make oath that I am the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

_____
Kimie Perry

STATE OF TENNESSEE

COUNTY OF WILSON

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the within named Kimie Perry the bargainor, with whom I am personally acquainted or proved to me on the basis of satisfactory evidence to be the person described herein, and who acknowledged that she executed the within instrument for the purposes therein contained.

_____
Notary Public

My Commission Expires: __2/1/23__

Book 1938 Page 346

Exhibit O

**Law Office**
**Of**
**J. PHILLIP JONES**

**J. Phillip Jones**
**Jessica D. Binkley**

**1800 Hayes Street**
**Nashville, TN 37203**
**www.phillipjoneslaw.com**
**December 20, 2022**

**Phone (615) 254-4430**
**Fax    (615) 254-4671**

Lovie Grant
2494 Saundersville Ferry Rd.
Mount Juliet, TN 37122

RE:  Tennessee Housing Development Agency
2494 Saundersville Ferry Rd.
Mount Juliet, TN 37122

Dear Lovie Grant:

This is to advise you that we have received instructions from the above referenced Mortgage Company to foreclose the mortgage on the house at the above address. In the event you desire to bring your loan current you must contact my office in order to obtain the amount needed for reinstatement. All payments required to bring your loan current will result in cancellation of the foreclosure provided your lender approves of your reinstatement.

We are proceeding with preliminary legal work required of us by your lender in order to prepare for the foreclosure. Once the foreclosure sale date has been determined, you will receive notice from us and arrangements should be made by you to vacate the property by the sale date if your loan is not otherwise brought current. If you have any questions concerning this matter, please do not hesitate to contact my office.

If you wish to receive a payoff statement or a reinstatement (the amount necessary to bring your account current and stop the foreclosure sale), in order to allow this office and the lender time to process your request, you must contact this office at least five (5) business days prior to the foreclosure sale date. Failure to do so may result in your property being sold at the foreclosure sale prior to us being able to provide you the amount necessary to stop the sale.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THEN THIS LETTER/NOTICE IS FOR INFORMATIONAL PURPOSES ONLY SINCE YOUR PROPERTY RIGHTS MAY BE AFFECTED.**

Sincerely,
**THE LAW OFFICE OF J. PHILLIP JONES**

Joyce Fultz
Legal Assistant

JPJ/mjl
Cc:  Tennessee Housing Development Agency
4010051631

## NOTICE REQUIRED BY THE
## FAIR DEBT COLLECTION
## PRACTICES ACT, (the ACT),
## 15 U.S.C. Section 1601 As Amended

1) As of the date of this letter, the **CURRENT PRINCIPAL BALANCE** owed is **$261,203.35.** The amount due on the day you pay will be greater because of interest, late charges, and other fees and costs.

2) Tennessee Housing Development Agency is the creditor to whom the debt is owed.

3) The debt will be assumed to be valid by the creditor's law firm, unless the debtor, within thirty (30) days after the receipt of this notice, disputes, in writing, the validity of the debt or some portion thereof.

4) If the debtor notifies the creditor's law firm in writing within thirty (30) days of the receipt of this notice that the debt or any portion thereof is disputed, the creditor's law firm will obtain a verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

5) If the creditor named is not the original creditor, and if the debtor makes a written request to the creditor's law firm within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6) Written requests should be addressed to Fair Debt Collection Clerk, LAW OFFICE OF J. PHILLIP JONES, 1800 HAYES STREET, NASHVILLE, TENNESSEE 37203.

7) This is an attempt to collect a debt. Any information furnished may be used to collect this debt. If you have received a discharge in Bankruptcy, then this letter/notice is for informational purposes only since your property rights may be affected.

*Law Office*
*Of*
## *J. PHILLIP JONES*

*J. Phillip Jones*
*Jessica D. Binkley*

*1800 Hayes Street*
*Nashville, TN 37203*
*www.phillipjoneslaw.com*
*December 20, 2022*

*Phone (615) 254-4430*
*Fax (615) 254-4671*

### NOTICE TO OCCUPANT OF PENDING ACQUISITION

<u>VIA CERTIFIED MAIL AND REGULAR MAIL</u>
Lovie Grant
2494 Saundersville Ferry Rd.
Mount Juliet, TN 37122

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA. ESTE ES UN AVISO MUY IMPORTANTE. SI NO ENTIENDE EL CONTENIDO, OBTENGA UNA TRADUCCION IMEDIATAMENTE. SI USTED NO RESPONDE DENTRO DE VIENTE (20) DIAS PUEDE SER QUE LE HAGAN MUDAR DE LA CASA O APARTMENTO EN DONDE VIVE.

> RE: GRANT, Lovie
> 2494 Saundersville Ferry Rd.
> Mount Juliet, TN 37122
> FHA No. 483-6327807

Dear Mortgagor/Occupant:

The mortgage for the property in which you are living is in foreclosure as a result of the property owner's default. Within the next 60 to 90 days, title to the property is expected to be transferred to Tennessee Housing Development Agency. Some time thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development (HUD).

HUD generally requires that there be no one living in the properties conveyed to the Secretary as a result of a foreclosure. As the Federal Housing Administration's (FHA) single family program is a mortgage insurance program, it must sell all acquired properties and use the proceeds of sale to help replenish the FHA Mortgage Insurance Fund. It is not a rental program. There are other programs within HUD that assist in making rental housing available.

However, before Tennessee Housing Development Agency conveys the property to HUD, you may be entitled to remain in the property for some period of time, pursuant to the Protecting Tenants at Foreclosure Act of 2009 (PTFA) or state or local law. If you are a bona fide tenant (someone other than the mortgagor, or the child spouse or parent of the mortgagor occupying the property pursuant to a bona fide lease or tenancy), a separate notice regarding your occupancy rights under PTFA will be provided to you when complete title to the property is transferred to Tennessee Housing Development Agency as a result of an order of a court or pursuant to provisions in the mortgage, deed of trust or security deed.

If you are not entitled to remain in the property pursuant to the PTFA or state or local law, you may nevertheless be eligible to remain in the property upon conveyance to HUD, if certain conditions are met, as described in Attachment 3, Conditions for Continued Occupancy. To be considered for continued occupancy upon conveyance to HUD, you must submit a written request to HUD **within 20 days of the date at the top of this letter. Oral requests are not permitted.**

Please use the enclosed Attachment 1, Form HUD-9539, Request for Occupied Conveyance, in making your request, as it gives HUD information it needs to make its decision. You must send your request and the enclosed Attachment 2, Request for Verification of Employment, to HUD's Mortgagee Compliance Manager (MCM) at the following address:

**Systems Networks, Corp.**
**Attn: Shepard Mail Office Complex**
**2401 NW 23rd Street, Suite 1D**
**Oklahoma City, OK 73107**

If an individual residing in the property suffers from a permanent, temporary, or long-term illness or injury that would be aggravated by the process of moving from the property, please also provide supporting documentation of the illness or injury. This documentation must include a projection of the date that the individual could be moved without aggravating the illness or injury and a statement by a state-certified physician establishing the validity of your claim.

Additional information that you wish to include with your request may be written on additional pages that you attach to the Request for Occupied Conveyance form.

If HUD approves your request to remain in the property, you will be required to sign a month-to-month lease and pay rent at the prevailing fair market rate. If HUD does not in fact become owner of this property, any decision it may make with respect to your continued occupancy will no longer apply.

Your right to continued occupancy of the property under HUD's Occupied Conveyance policies will only be temporary, depending on the circumstances, as described in Attachment 4, Temporary Nature of Continued Occupancy.

For assistance in finding affordable housing, you may wish to contact one or more of HUD's approved housing counseling agencies. These agencies usually provide services at little or no cost. A counselor may be able to recommend other organizations that can also be of assistance. If you have access to the Internet, you may locate a local housing counseling agency by visiting the following webpage: http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. Alternatively, you may call the HUD Housing Counseling and Referral Line, weekdays between 9:00 am and 5:00 pm EST. The Referral Line telephone number is (800)569-4287.

If you have any questions concerning this notice, please contact Tennessee Housing Development Agency.

**PLEASE BE ADVISED THAT THE LAW OFFICE OF J. PHILLIP JONES, ATTORNEY, IS ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION PROVIDED BY YOU MAY BE USED FOR THAT PURPOSE. .**

**IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THEN THIS LETTER/NOTICE IS FOR INFORMATIONAL PURPOSES ONLY SINCE YOUR PROPERTY RIGHTS MAY BE AFFECTED.**

Sincerely,
**THE LAW OFFICE OF J. PHILLIP JONES**

Joyce Fultz
Legal Assistant

Cc:     Lovie Grant
        Tennessee Housing Development Agency
        System Networks, Corp.

Attachments
**Attachment 1 (Request for Occupied Conveyance – Form HUD – 9539)**
**Attachment 2 (Request for Verification of Employment)**
**Attachment 3 (Conditions for Continued Occupancy)**
**Attachment 4 (Temporary Nature of Continued Occupancy)**

The Law Office of J. Phillip Jones
1800 Hayes Street
Nashville, Tennessee 37203
December 26, 2022

RE: Tennessee Housing Development Agency

Certified Mail # 7020 1290 0002 0764 0741(Phillip Jones)
Certified Mail # 7020 1290 0002 0764 0758 (THDA)

December 26, 2022

To Whom It May Concern

I hereby dispute the Validity of this debt You are to cease and deist from all debt collection practices immediately.

The Deed of Trust is not a enforceable contract, it is an offer that was never accepted by THDA or any other party to the agreement other then me. My signature is the only signature on the Deed of Trust, Warranty Deed, and Promissory note. I never received any conformation of the acceptance of this instrument by anyone. The Deed of Trust was registered without being accepted by the other parties making it an "offer" and not a binding contract. I have Accepted the Warranty Deed and registered it with the county recorder giving my equity title plus possession of the property in question.

THDA bought a consumer credit contract that was fraudulent and unenforceable due to the many notices required to be disclosed to me as the consumer that were never disclosed. This agreement has been rescinded do to lack of full disclosure and "mistakes" in the original contract between me and the original creditor Colten Mortgage.

An attempt to foreclosed on my homestead using the Color of Law will result in your violation of my civil rights and I will be add you to the current Federal case #3:22-cv-00863.

This is a written request for the following documents; please provide the original recorded Deed of Trust Signed and accepted by all parties involved in this matter. Please provide a copy of the Notice of acceptance that is required to be sent by the Uniform Commercial Code. Please provide the original contract containing the notices required by Regulation P and the right of rescission. Please provide the original signed promissory note.

Lovie Grant

cc: Tennessee Housing Development Agency

Case 3:23-cv-00063    Document 1    Filed 01/23/23    Page 34 of 38 PageID #: 34

*Law Office*
*Of*
*J. PHILLIP JONES*

*J. Phillip Jones*　　　*1800 Hayes Street*　　　*Phone (615) 254-4430*
*Jessica D. Binkley*　　　*Nashville, TN 37203*　　　*Fax　(615) 254-4671*
　　　　　　　　　　*www.phillipjoneslaw.com*

*January 9, 2023*

Lovie Grant
2494 Saundersville Ferry Rd.
Mount Juliet, TN 37122

　　　　　　　RE:　2494 Saundersville Ferry Rd.
　　　　　　　　　　Mount Juliet, TN 37122

Dear Ms. Grant:

　　　I am writing in response to your letter to me dated both December 26, 2022 and December 29, 2022. Your letter consists of two (2) paragraphs making allegations to which I will not respond to and a paragraph making a threat against me which again I will not respond to. Finally your letter makes a request for me to provide you certain original documents none of which are in my possession. If you wish to view any original loan documents you will need to make arrangements through the U.S. District Court.

　　　　　　　　　　　　Respectfully,

　　　　　　　　　　　　**LAW OFFICE OF J. PHILLIP JONES**

　　　　　　　　　　　　J. Phillip Jones

　　　JPJ/jf
Cc:　　Volunteer Mortgage Loan Servicing – Attn: Jason Matthews
　　　Loan No. 4010051631

*Law Office*
*Of*
# *J. PHILLIP JONES*

| | | |
|---|---|---|
| *J. Phillip Jones* | *1800 Hayes Street* | *Phone (615) 254-4430* |
| *Jessica D. Binkley* | *Nashville, TN 37203* | *Fax (615) 254-4671* |
| | *www.phillipjoneslaw.com* | |

January 13, 2023

**VIA CERTIFIED MAIL & REGULAR MAIL**

**LOVIE D. GRANT**
**2494 SAUNDERSVILLE FERRY ROAD**
**MOUNT JULIET, TN 37122**

      RE:    **2494 SAUNDERSVILLE FERRY ROAD**
                 **MOUNT JULIET, TN 37122**

Dear **LOVIE D. GRANT**:

In connection with the foreclosure on your property at the above address, please be advised that the foreclosure sale is scheduled for **THURSDAY, FEBRUARY 23, 2023, AT 1:00 P.M., LOCAL TIME.** A copy of the foreclosure advertisement is enclosed.

If you have any questions regarding this matter, please contact me prior to the scheduled date.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS LETTER/NOTICE IS FOR INFORMATIONAL PURPOSES ONLY SINCE YOUR PROPERTY RIGHTS MAY BE AFFECTED.**

            Sincerely,

            **LAW OFFICES OF J. PHILLIP JONES**

            Joyce Fultz
            Legal Assistant

JPJ/jf
Enclosure
CC:    VOLUNTEER MORTGAGE LOAN SERVICING/THDA (4010051631-FHA)
          (NOS TO WILLIAMS AUCTION)

*Law Office*
*Of*
## *J. PHILLIP JONES*

| | | |
|---|---|---|
| *J. Phillip Jones* | *1800 Hayes Street* | *Phone (615) 254-4430* |
| *Jessica D. Binkley* | *Nashville, TN 37203* | *Fax (615) 254-4671* |
| | *www.phillipjoneslaw.com* | |

January 13, 2023

**VIA CERTIFIED MAIL & REGULAR MAIL**

**LOVIE D. GRANT**
**2494 SAUNDERSVILLE FERRY ROAD**
**MOUNT JULIET, TN 37122**

RE:    **2494 SAUNDERSVILLE FERRY ROAD**
          **MOUNT JULIET, TN 37122**

Dear **LOVIE D. GRANT:**

In connection with the foreclosure on your property at the above address, please be advised that the foreclosure sale is scheduled for **THURSDAY, FEBRUARY 23, 2023, AT 1:00 P.M., LOCAL TIME.** A copy of the foreclosure advertisement is enclosed.

If you have any questions regarding this matter, please contact me prior to the scheduled date.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS LETTER/NOTICE IS FOR INFORMATIONAL PURPOSES ONLY SINCE YOUR PROPERTY RIGHTS MAY BE AFFECTED.**

Sincerely,

**LAW OFFICES OF J. PHILLIP JONES**

Joyce Fultz
Legal Assistant

JPJ/jf
Enclosure
CC:    VOLUNTEER MORTGAGE LOAN SERVICING/THDA (4010051631-FHA)
            (NOS TO WILLIAMS AUCTION)

Servicemembers Civil Relief
Act Notice Disclosure

U. S. Department of Housing
and Urban Development
Office of Housing

OMB Approval 2502-0584
Exp 12/31/2017

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

* Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
* Reserve and National Guard personnel who have been activated and are on Federal active duty
* National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
* Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
* Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

* The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
* The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
* The SCRA contains many other protections besides those applicable to home loans

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

* In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders [Note. Lender should place its name, address, and contact information here.]
* There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

* Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

* "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form HUD-92070
(10/2014)